UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL S. McCONKIE, | ) |
| Plaintiff | ) ) ) |
| v. | ) Civil No. 04-91-B-W |
| SCOTT NICHOLS, | ) ) ) |
| Defendant | ) ) |

*AMENDED[1]*
*DECISION RECOMMENDING DISMISSAL OF 42 U.S.C. § 1983 ACTION*

Michael McConkie was convicted in the State of Maine for engaging in unlawful sexual conduct after unsuccessfully prosecuting a motion to suppress statements. The motion to suppress was premised on Fifth Amendment grounds; McConkie argued that the inculpatory statements made to a detective were elicited by a promise that their non-custodial conversation would remain confidential. After his conviction, McConkie convinced the Maine Supreme Court that the use of his statements violated his Fifth Amendment right against self-incrimination. Before this court McConkie pleads his plaint solely as a substantive due process claim.[2] The defendant, Scott Nichols, has filed a motion to dismiss and, in the alternative, a motion for summary judgment (Docket No. 20) and McConkie has filed his own motion for partial summary judgment (Docket No. 22). Because I conclude that McConkie does not state a claim under the substantive due

---

[1] The only amendment is on Page 2, third line from bottom, wherein Nichols is replaced with McConkie.

[2] And he does not attempt to plead a distinct procedural due process count based on some sort of fair play theory. See footnote 2.

process clause of the Fourteenth Amendment, I recommend that the Court **GRANT** the defendant's motion seeking dismissal of the one-count complaint. Such a disposition would moot both Nichol's request for summary judgment and McConkie's motion for partial summary judgment.

*Allegations of McConkie's Complaint*

Michael McConkie is a resident of the Town of Fairfield, County of Somerset, State of Maine. (Compl. ¶ 1.) At all times relevant to this action, defendant Scott Nichols was employed by the Maine State Police, Department of Public Safety as a police officer. (Id. ¶ 4.)

On or about June 23, 1998, McConkie agreed to meet with Nichols to discuss allegations that McConkie had engaged in unlawful sexual conduct with a minor. (Id. ¶ 5.) The interview took place at the Fairfield Police Department in Fairfield, Maine. (Id. ¶ 6.) During the course of the interview, Nichols assured McConkie that any information he provided during the interview would "stay confidential." (Id. ¶ 8.) Following this assurance McConkie made incriminating statements to Nichols concerning the minor. (Id. ¶ 9.) These ill-gotten statements, McConkie asserts, directly caused McConkie's 525 days of incarceration by the State of Maine. (Id. ¶ 11.)

With respect to his legal basis for his claim, McConkie alleges that his substantive due process rights were violated when Nichols affirmatively mislead him as to his constitutionally protected right against self-incrimination. (Id. ¶ 10.) "By 1998," McConkie 'alleges,' "it was clearly established that consistent with a person's substantive due process rights, a police officer could not affirmatively mislead a suspect as to his constitutionally protected right against self-incrimination." (Id. ¶ 14.) (citing State v.

Nash, 421 N.W.2d 41 (1988) and Linares v. State, 471 S.E.2d 208 (1996)). He states "Defendant Nichols acted recklessly or with callous indifference to plaintiff's substantive due process rights when he intentionally deceived plaintiff as to plaintiff's Fifth Amendment privilege against self-incrimination." (Id. ¶ 16)(emphasis added).

*Maine Law Court Decision*

In ruling on McConkie's direct appeal, the Maine Law Court explained its decision on the Fifth Amendment question as follows:

> Prior to trial, McConkie filed a motion to suppress the statements he had made to Detective Nichols because Detective Nichols had misrepresented to him that whatever he said during the meeting would remain confidential and therefore not be used against him later. After a hearing, the Superior Court (Waldo County, *Marsano, J.*) denied the motion.
> Following a jury trial, McConkie was convicted of unlawful sexual conduct. On appeal, McConkie contends the statements he made to Detective Nichols should have been suppressed because Detective Nichols deceived him as to his Fifth Amendment privilege against self-incrimination, thereby making the admission at trial of the statements fundamentally unfair. Accordingly, he asks this Court to consider the admissibility of the statements he made to Detective Nichols during their meeting.
> ...
> What McConkie complains of is that, although Detective Nichols was not obligated to warn him that anything he said could be used against him in a court of law, Detective Nichols violated his due process rights when he affirmatively misled him to believe that the exact opposite was true, i.e., that the information he provided would not be used against him because it would remain confidential.
> "The Due Process Clause of the Constitution prohibits deprivations of life, liberty, or property without 'fundamental fairness' through governmental conduct that offends the community's sense of justice, decency and fair play." State v. Stade, 683 A.2d 164, 166 (Me.1996) (quoting Roberts v. Maine, 48 F.3d 1287, 1291 (1st Cir.1995)).[3] A

---

[3] In a footnote here the Maine Law Court opines:
> While statements may be suppressed based on violations of both the Fifth and Fourteenth Amendments, "[w]here the Fifth Amendment analysis seeks to determine whether the defendant's confession was compelled, a due process analysis asks 'whether the State has obtained the confession in a manner that comports with due process.'" State v. Rees, 2000 ME 55, ¶ 36, 748 A.2d 976, 987 (Saufley, J. dissenting) (quoting Miller v. Fenton, 474 U.S. 104, 110 (1985)). The focus in a due process analysis, "a focus that may

3

> fundamental concept of due process of law is that an accused's confession must be voluntary if it is to be admitted at trial. See State v. Mikulewicz, 462 A.2d, 497, 500 (Me.1983). "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." Id. at 501. Fenton, 474 U.S. 104, 110 (1985)). The focus in a due process analysis, "a focus that may provide broader protections than the Fifth Amendment, is not limited to the presence or absence of compulsion, but rather addresses the totality of the State's actions in obtaining the confession." Id.
>
> Applying this standard in the present case, it is evident that McConkie's statements to Detective Nichols were obtained through the use of an interrogation tactic that does not fall within the bounds of fair play and that the admission of those statements at trial therefore violated McConkie's right to due process of law pursuant to the Maine and the United States Constitution. Detective Nichols, although not required to advise McConkie of his Miranda rights in the circumstances of the present case, was nonetheless not at liberty to affirmatively mislead McConkie <u>as to his constitutionally protected right against self-incrimination.</u>
>
> Although we view the totality of the circumstances in determining the voluntariness of a confession, see Mikulewicz, 462 A.2d at 501, 1079 we cannot condone affirmative conduct by a state actor attempting to mislead a suspect regarding <u>his constitutionally protected right to remain silent and the consequences of speaking.</u> Thus we conclude that the admission at trial of the statements derived as a result of that conduct caused McConkie's trial to be fundamentally unfair.

State v. McConkie, 2000 ME 158, ¶¶ 5,6,8,9-11, 755 A.2d 1075, 1077-1079 (emphasis added)(footnote omitted).

*Discussion*

It is Nichols's assertion that the allegations of McConkie's complaint do not allege the elements of a substantive due process claim "because he has not alleged 'conscience shocking' conduct."; "Substantive due process claims cannot be based on conduct that is 'merely reckless' or 'callously indifferent'" under County of Sacramento v. Lewis, 523

---

> provide broader protections than the Fifth Amendment, is not limited to the presence or absence of compulsion, but rather addresses the totality of the State's actions in obtaining the confession." Id  2000 ME 158, at ¶ 9 n.3, 755 A.2d at 1078 n.3.  This case does not require that the court wrestle with the viability of any Fourteenth Amendment due process claim because, even in view of the Law Court's discussion of a "fair play" due process claim, McConkie is proceeding solely on a "shocks the conscious" substantive due process theory.

U.S. 833, 854 (1998) or Chavez v. Martinez, 538 U.S. 760, 775 (2003). Prompted by Nichols's failure to state a claim argument, I have analyzed McConkie's substantive due process legal theory and factual allegations under the governing United States Supreme Court precedents. My analysis of this case differs markedly from the one undertaken by the parties. I conclude that dismissal is appropriate for the following reasons.

"Section 1983" of title 42, the United States Supreme Court stated in Albright v. Oliver, "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)). "The first step in any such claim," the Court directed, "is to identify the specific constitutional right allegedly infringed." Id. (citing Graham v. Connor, 490 U.S. 386, 394 (1989) and Baker, 443 U.S. at 140). The Court explained in Graham that if a particular constitutional amendment "provides an explicit textual source of constitutional protection" vis-à-vis state action, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 490 U.S. at 395. See also Lewis, 523 U.S. at 842; Oliver, 510 U.S. 266, 271-175.

The parties are both aware of the Fifth Amendment plurality opinion[4] in the United States Supreme Court's Chavez v. Martinez, 538 U.S. at 763-77 (Thomas, J., joined by Rhenquist, Chief J., O'Connor, J., and Scalia, J.) Therein, this quartet agreed that the plaintiff, whose confession was coerced via an interrogation at a hospital while the plaintiff was exclaiming that he was choking and dying, see 538 U.S. 760, 784-86 (2003) (transcript of tape-recorded questioning) (Stevens, J., concurring in part and

---

[4] I use the term Fifth Amendment plurality opinion because there is also a different Martinez plurality joining force vis-à-vis disposition of the Fourteenth Amendment claim.

5

dissenting in part), could not proceed with his action on Fifth Amendment grounds because he was never charged with a crime. 538 U.S. at 766-67. The Fifth Amendment plurality explained:

> The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1 (1964), requires that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5 (emphases added). We fail to see how, based on the text of the Fifth Amendment, Martinez can allege a violation of this right, since Martinez was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case.
> Although Martinez contends that the meaning of "criminal case" should encompass the entire criminal investigatory process, including police interrogations, Brief for Respondent 23, we disagree. In our view, a "criminal case" at the very least requires the initiation of legal proceedings. See Blyew v. United States, 13 Wall. 581, 595 (1872) ("The words 'case' and 'cause' are constantly used as synonyms in statutes and judicial decisions, each meaning a proceeding in court, a suit, or action" (emphasis added)); Black's Law Dictionary 215 (6th ed.1990) (defining "[c]ase" as "[a] general term for an action, cause, suit, or controversy at law ... a question contested before a court of *justice*" (emphasis added)).
> We need not decide today the precise moment when a "criminal case" commences; it is enough to say that police questioning does not constitute a "case" any more than a private investigator's precomplaint activities constitute a "civil case." Statements compelled by police interrogations of course may not be used against a defendant at trial, see Brown v. Mississippi, 297 U.S. 278, 286 (1936), but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs, see United States v. Verdugo-Urquidez, 494 U.S. 259, 264(1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is *a* fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial" (emphases added; citations omitted)); Withrow v. Williams, 507 U.S. 680, 692 (1993) (describing the Fifth Amendment as a " 'trial right' "); id., at 705 (O'CONNOR, J., concurring in part and dissenting in part) (describing "true Fifth Amendment claims" as "the extraction and use of compelled testimony" (emphasis altered))
> Here, Martinez was never made to be a "witness" against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case. Nor was he ever placed under oath and exposed to " 'the cruel trilemma of self-accusation, perjury or contempt.' " Michigan v. Tucker, 417 U.S. 433, 445 (1974) (quoting Murphy v. Waterfront Comm'n of N.Y.

> Harbor, 378 U.S. 52, 55 (1964)). The text of the Self-Incrimination Clause simply cannot support the Ninth Circuit's view that the mere use of compulsive questioning, without more, violates the Constitution.

Id. at 766-67.

The Court nowhere indicated that a Fifth Amendment claim could never be the basis for a 42 U.S.C. § 1983 action if a plaintiff was prosecuted for a crime and/or compelled to testify against himself in a criminal case. While the Fifth Amendment plurality did allow that a plaintiff never charged might have recourse through the Fourteenth Amendment,

> Our views on the proper scope of the Fifth Amendment's Self-Incrimination Clause do not mean that police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self- Incrimination Clause, would govern the inquiry in those cases and provide relief in appropriate circumstances.

id. at 773, in a footnote to this passage, the Fifth Amendment plurality acknowledged the operation of Graham's edict vis-à-vis a plaintiff who had a valid Fifth Amendment claim:

> We also do not see how, in light of Graham v. Connor, 490 U.S. 386 (1989), Justice KENNEDY can insist that "the Self-Incrimination Clause is applicable at the time and place police use compulsion to extract a statement from a suspect" while at the same time maintaining that the use of "torture or its equivalent in an attempt to induce a statement" violates the Due Process Clause. Post, at 2016. (opinion concurring in part and dissenting in part). Graham foreclosed the use of substantive due process analysis in claims involving the use of excessive force in effecting an arrest and held that such claims are governed solely by the Fourth Amendment's prohibitions against "unreasonable" seizures, because the Fourth Amendment provided the explicit source of constitutional protection against such conduct. 490 U.S., at 394-395. If, as Justice KENNEDY believes, the Fifth Amendment's Self-Incrimination Clause governs coercive police interrogation even absent use of compelled statements in a criminal case, then Graham suggests that the Due Process Clause would not.

7

Id. at 773 n.5.[5]

If there is any case that would satisfy a court that an actionable Fifth Amendment claim can be asserted based on a coerced confession it is McConkie's. McConkie was tried and convicted of the unlawful sexual conduct charges based upon his confession that he was unable to get suppressed. Post-Martinez, there still may be cases that require some analysis as to whether the plaintiff was sufficiently embroiled in a criminal case in order to proceed with a Fifth Amendment claim, see Renda v. King, 347 F.3d 550, 557-59 (3d Cir. 2003) (concluding post-Martinez that questioning a plaintiff in custody without providing Miranda warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against her at trial, in a case where charges were brought but were dropped after the court granted a motion to suppress); Crowe v. County of San Diego, 303 F.Supp.2d 1050, 1088-89 (S.D. Cal. 2004) (concluding that use of coerced confessions in a grand jury proceeding was not alone basis for a Fifth Amendment claim, observing that "the Fifth Amendment was directed at preventing convictions, rather than indictments, resulting from coerced statements," citing Lawn v. United States, 355 U.S. 339 (1958)); Higazy v. Millennium Hotel and Resorts, 346 F.Supp.2d 430, 447-49 (S.D.N.Y. 2004) (determining that a coerced confession in a bail proceeding did not constitute use in a "criminal case" for the purposes of the Fifth Amendment); see also Allison v. Snyder, 332 F.3d 1076, 1080 (7th Cir.2003) (compelled drug treatment involving group therapy and the admission of guilt was not a Fifth Amendment violation absent use of admission in a criminal trial); Wolfe v. Pennsylvania

---

[5] The Ninth Circuit Court of Appeals remanded the case to the District Court. According to the, what is still a very active, docket, trial is now set in the case for August 30, 2005. Contra Martinez, 538 U.S. at 781-83 (Scalia, J., concurring in part in judgment) (expressing the view that Martinez would be unable to raise anew his substantive due process claim on remand).

Dep't of Corr., 334 F.Supp.2d 762, 772 -73 (E.D.Pa. 2004) (sex offender treatment program requiring full disclosure of past sexual behavior in front of other inmates did not state a Fifth Amendment claim because the voluntary program did not compel inmates to incriminate themselves in a criminal proceeding), but McConkie's does not fall into a gray area.

Having met with success in the Maine Law Court on the motion to suppress may not alone be sufficient to win the day in a 42 U.S.C. § 1983 action, however it does remove the not unusual complication posed by the Heck v. Humphrey prohibition against bringing civil actions without first proving that the conviction was reversed, expunged, or declared invalid by a state court or in a federal habeas proceeding. 512 U.S. 477, 486-87(1994). However, McConkie has not pled a Fifth Amendment claim[6] and Nichols has never had the opportunity to join the issue.[7] Under these circumstances, dismissal for failure to state a claim seems the best resolution of the pending motions.

---

[6] Had McConkie conceived of his claim as being under the Fifth Amendment he may have encountered various difficulties, in addition to Nichols's claim of qualified immunity that would surely arise under such a claim as it does in the substantive due process context. Allegations solely pertaining to Nichols's conduct to establish a Fifth Amendment claim would be additionally problematic because it was probably not Nichols who ultimately decided to "use" the statements against McConkie in the criminal trial. Of course the doctrines of judicial and prosecutorial immunity might be put in play had other defendants been named. Furthermore Nichols's claim of qualified immunity under the "clearly established" prong would take on a new life of its own when this claim is analyzed under traditional Fifth Amendment jurisprudence. In other words, I am not suggesting that it is somehow a failure on counsel's part to have framed this case as a substantive due process claim as his best alternative. I am simply convinced that the logic of Graham compels the claim to be framed as a Fifth Amendment claim under these facts.

[7] It is true that Nichols has asserted a qualified immunity defense to the substantive due process claim and that the first step in that analysis requires that the court examine the factual allegations to see if it states a claim for a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Tremblay v. McClellan, 350 F.3d 195, 199 (1st Cir. 2003) (citing Saucier). I have concluded that McConkie has not stated a claim for a substantive due process violation, albeit for a different reason than the one advanced by Nichols. Nichols has not identified the Graham infirmity of McConkie's claim and that infirmity really moots Nichols's first prong argument vis-à-vis the shocks the conscious standard. Had this complaint been presented as a Fifth Amendment claim, given the Law Court's decision, this court might be hard pressed to find that there was no constitutional violation.

As stated earlier, this case does not require that the court wrestle with the viability of any concurrent or independent Fourteenth Amendment due process claim, see footnote 2, in view of Graham, as McConkie has unquestionably brought his action as a "shocks the conscious" substantive due process

9

*Conclusion*

Accordingly, as the parties currently posture this action the proper resolution of the pending motions is to **GRANT** Nichols's motion to dismiss for failure to state a claim. The request for summary judgment relief by Nichols and McConkie's partial motion for summary judgment would then be **MOOT**.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 29, 2005.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge

---

claim. It is worth noting that in <u>Martinez</u> Justice Scalia described the right apropos coerced confessions as being a "procedural guarantee[]" of the Fifth Amendment. 538 U.S. at 781 (Scalia, J., concurring in part in the judgment). None of the justices who penned opinions in <u>Martinez</u> used the term "procedural due process" or "fundamental fairness" in assessing the constitutional foothold(s) for a coerced confession claim. Common sense does not always go hand in hand with constitutional analysis, but it does not seem to me that a citizen has a discrete constitutional right not to have the police lie to them; the constitutional claim arises only if the lie results in an infringement of one of the enumerated rights guaranteed by the Constitution.