UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL S. MCCONKIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 04-91-B-W |
| | ) | |
| SCOTT NICHOLS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Michael S. McConkie filed a § 1983 action against Detective Scott Nichols on the ground that Detective Nichols lied to him during a police interview and extracted a confession, which resulted in a criminal conviction that was later vacated. After this Court affirmed a recommended decision dismissing Mr. McConkie's amended complaint, Mr. McConkie filed a motion for reconsideration. This Court reaffirms the portion of the recommended decision applicable to claims other than the substantive due process "coercive interrogation" claim. However, based on Mr. McConkie's allegation that he was "harmed" as a result of the police interrogation, this Court agrees his amended complaint is sufficient to withstand a Rule 12(b)(6) motion to dismiss and to that extent only, this Court vacates its Order dated July 1, 2005. Turning to the motion for summary judgment, which Defendant filed in the alternative, this Court concludes that the alleged conduct, when viewed in the light most favorable to the Plaintiff, is not conscience-shocking and this Court grants Defendant's Motion for Summary Judgment.

**I. Statement of Facts**

This case traces back to a police interrogation on June 23, 1998, when Detective Scott Nichols assured Michael S. McConkie any information provided during his interview would "stay confidential," *Pl.'s Am. Compl.* at ¶ 8 (Docket # 3), and, on that basis, elicited incriminating statements. Mr. McConkie's statements did not "stay confidential". Instead, the state of Maine prosecuted Mr. McConkie and used his statements at trial to convict him of unlawful sexual contact with a minor. *Id.* at ¶ 10, 11. On August 11, 2000, the Maine Supreme Judicial Court ruled that Detective Nichols' interview violated Mr. McConkie's constitutional rights, vacated the conviction, and remanded the case to Superior Court. *State v. McConkie,* 2000 ME 158, 755 A.2d 1075. After a second trial in which the incriminating statements were not admitted, Mr. McConkie was found not guilty and was released from prison having served 525 days incarceration. *Pl.'s Mot. for Partial Summ. J.* at 4 (Docket # 22).

### A.  The Amended Complaint

Mr. McConkie filed an amended complaint, asserting causes of action under 18 U.S.C. §§ 1983 and 1988. *Pl.'s Am. Compl*. Mr. McConkie alleged Detective Nichols violated his "substantive due process rights when he affirmatively mislead plaintiff as to his constitutionally protected right against self-incrimination (i.e. that the information he provided would not be used against him because it would remain confidential)". *Id.* at ¶ 10. He went on to assert that as "a direct result of defendant Nichols' violation of plaintiff's due process rights, plaintiff was incarcerated by the State of Maine for at least 525 days." *Id.* at ¶ 11. After referencing the Law Court's decision, *id.* at ¶ 12, Mr. McConkie reiterated that as "a direct result of defendant's violation of plaintiff's due process rights, plaintiff was harmed." *Id.* at ¶ 13. He concluded that by "violating plaintiff's substantive due process rights, defendant, in his individual capacity, has

2

violated 42 U.S.C. § 1983", *id.* at ¶ 15, and demanded unspecified damages, including punitive damages.

### B.  The Motion to Dismiss / Motion for Summary Judgment

On February 3, 2005, Detective Nichols filed in the alternative:  a motion to dismiss and a motion for summary judgment, *Def.'s Mot. to Dismiss and Alternatively Mot. for Summ. J.* (Docket # 20), and on March 29, 2005, Magistrate Judge Kravchuk issued a decision, recommending the amended complaint be dismissed for failure to state a claim. *Am. Report and Recommended Decision* (Docket # 38).  Magistrate Judge Kravchuk noted that the first step in a § 1983 analysis is to determine the source of the constitutional right. *Id.* at 5.  Analyzing *Chavez v. Martinez,* 538 U.S. 760 (2003), Judge Kravchuk concluded that, although Mr. McConkie may have a Fifth Amendment claim, he had not asserted one and that, under *Graham v. Connor,* 490 U.S. 386 (1989), the substantive due process clause of the Fourteenth Amendment did not govern the claim made in his Amended Complaint. *Id.* at 5-9.

Mr. McConkie objected. *Pl.'s Obj. to Report and Recommended Decision.* (Docket # 41).  Mr. McConkie acknowledged that if he had predicated his claim on the extraction and use of the compelled statements at trial, the *Graham* infirmity would apply, since the Fifth Amendment would be the more explicit source of constitutional protection. *Id.* at 3.  However, Mr. McConkie emphasized he was not making a Fifth Amendment claim; instead, he was complaining "only of the propriety of the law enforcement tactics used to obtain the confession…." *Id.* (emphasis in original).  On July 1, 2005, this Court affirmed Judge Kravchuk's Recommended Decision. *Order Affirming Report and Recommended Decision* (Docket # 43).  In doing so, this Court addressed Mr. McConkie's objection in a footnote, noting that the gravamen of the amended complaint was that he was "improperly charged, tried,

3

convicted, and as a consequence spent 525 days in prison." *Id.* at 1 n.1.  This Court pointed out that the amended complaint specified that the harm from Detective Nichols' violation of his constitutional rights was his incarceration and there was no allegation of mental or physical abuse during the police interrogation itself. *Id.*

On July 12, 2005, Mr. McConkie moved for reconsideration. *Pl.'s Mot. for Reconsideration of Order Granting Def.'s Mot. to Dismiss* (Docket # 45).  Asserting his complaint "is and has always been, that (Detective) Nichols violated his substantive due process rights by affirmatively misleading him as to his right against self-incrimination during the interrogation process", Mr. McConkie claimed this Court has "misconstrued (his) complaint and, as such, has committed a manifest error of law." *Id.* at 3.  He said he should be allowed to pursue a Fourteenth Amendment claim, regardless of whether a Fifth Amendment claim was available to him. *Id.* at 4.  Mr. McConkie also cited the allegation in the amended complaint that he had suffered harm from the interrogation and argued that this Court erred in failing to accept this allegation as true for purposes of the motion to dismiss.[1]  *Id.* at 4.

## II. Discussion

### A. Motion to Dismiss

#### 1. Misconstruction

---

[1] Mr. McConkie asserts Detective Nichols has admitted that his violation of Mr. McConkie's substantive due process rights caused his incarceration.  During discovery, Mr. McConkie made the following Rule 36 Request for Admission:  "During the period between his conviction and the subsequent not guilty verdict, McConkie spent 525 days in prison as a result of Nichols' violation of McConkie's due process rights."  On September 8, 2004, Detective Nichols admitted this request.  *Def.'s Answers to Requests for Admissions* at ¶ 17 (Docket # 29 - Ex. A); *Def.'s Mot. for Reconsideration of Order Granting Def.'s Mot. to Dismiss* (Docket # 45 – Ex. A).  On a motion to dismiss, this Court is limited to considering the allegations in the plaintiff's complaint.  *Disabled Americans for Equal Access, Inc. v. Ferries del Caribe, Inc.,* 405 F.3d 60, 65 n.6 (1st Cir. 2005); *Rivera v. Rhode Island,* 402 F.3d 27, 31 (1st Cir. 2005)("We look only to the allegations in the complaint and take them as true, as required in a Rule 12(b)(6) motion.").  Considering documents outside the pleadings, including the response to the request for admission, would ignore "the standard of review from a Rule 12(b)(6) motion to dismiss." *Disabled Americans,* 402 F.3d at 65 n. 6.

This Court has not misconstrued the issues in this case. In fact, its characterizations of the issues and Mr. McConkie's characterizations are strikingly similar.[2] His real objection is that this Court decided the issues against him: to disagree, however, is not to misconstrue. That said, Mr. McConkie may be engaging in strategic ambiguity. At some points, he claims he is entitled to damages for his prosecution, conviction, and incarceration; at other points, he concedes he is not.[3] The nature of his claim, however, determines the scope of the harm.

Mr. McConkie was convicted when his incriminating statements were admitted and not convicted when they were not. As Magistrate Judge Kravchuk explained, the use of his statements at trial may have constituted a Fifth Amendment violation, but Mr. McConkie has not raised a Fifth Amendment argument. As the only causal link between a constitutional violation and his conviction and incarceration is the violation of the unasserted Fifth Amendment claim, he cannot claim the conviction and incarceration as harm flowing directly from the coercive interrogation. The interrogation itself did not cause this harm.[4]

This Court reaffirms both Magistrate Judge Kravchuk's recommended decision and its ruling on this issue. The Plaintiff's motion for reconsideration is DENIED to the extent it requests this Court to alter its July 1, 2005 Order affirming the recommended decision and

---

[2] Mr. McConkie insists his claim "is and has always been that Nichols violated his substantive due process rights by affirmatively misleading him as to his right against self-incrimination during the interrogation process." *Pl.'s Mot. for Reconsideration of Order Granting Def.'s Mot. to Dismiss* at 3. He goes on to describe the issue as "whether the Fourteenth Amendment can apply solely to coercive police questioning…." *Id*. In footnote 1 of its Order, this Court described his claim as being "a substantive due process claim relating only to the coercive manner of the interrogation, not to the actual use of the statements at trial." *Order Affirming Report and Recommended Decision* at 1 n.1.

[3] Compare the following: "First, nothing in *Chavez* can be read as foreclosing McConkie's ability to pursue a substantive due process claim where he is challenging only the manner of the interrogation and *not its use at trial*". *Pl.'s Obj. to the Magistrate Judge's Recommended Decision* at 6 (emphasis supplied). "Specifically, Nichols admitted, in response to a request for admission, that '[d]uring the period between his conviction and the subsequent not guilty verdict, McConkie spent 525 days in prison *as a result of Nichols' violation of McConkie's due process rights*.'" *Pl.'s Mot. for Reconsideration of Order* at 5 (emphasis in original; citation omitted).

[4] As Magistrate Judge Kravchuk noted, Detective Nichols did not decide to prosecute Mr. McConkie nor did he decide to use the incriminating statements at trial. In any event, a Fifth Amendment claim could well have faced insurmountable problems. *Am. Report and Recommended Decision* at 9 n.6.

dismissing any claim for damages flowing from a violation of his Fifth Amendment privilege against self-incrimination, including specifically any damages relating to his prosecution, conviction and imprisonment.

### 2. "Harm" Resulting From The Stand Alone Substantive Due Process Claim

Mr. McConkie alleges unspecified "harm" resulting solely from a "coercive interrogation" violative of his rights to substantive due process. In its July 1, 2005 Order, this Court agreed that *Chavez* may allow a substantive due process claim resulting from a coercive police interrogation untethered to an enumerated right. *Order Affirming Report and Recommended Decision* at 1 n.1; *Chavez,* 538 U.S. at 773 ("Our views on the proper scope of the Self-Incrimination Clause do not mean that police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry and can provide relief in appropriate circumstances."). Given the possibility of a stand alone substantive due process claim from an unconstitutional police interrogation, the only remaining question is whether Mr. McConkie's general allegation of harm is sufficient to withstand a Rule 12(b)(6) motion. Upon reconsideration and with considerable reluctance, this Court agrees with Mr. McConkie that his amended complaint's unspecified allegation of "harm" is sufficient for Rule 12(b)(6) purposes, though barely so.

This Court's skepticism rises from its perception that Mr. McConkie has trimmed his sails with the shifting winds. Facing dismissal, he has sought refuge in the safe harbor of Rule 12(b)(6). Paragraph eleven of his Amended Complaint alleges the following harm:

"As a direct result of defendant's violation of plaintiff's due process rights, plaintiff was incarcerated by the State of Maine for 525 days." *Am. Compl.* at ¶ 11.

Paragraph twelve posits the Maine Supreme Judicial Court decision in *State v. McConkie. Id.* at ¶ 12.  Paragraph thirteen then makes an unspecified claim of "harm" from the violation of his due process rights:

"As a direct result of defendant's violation of plaintiff's due process rights, plaintiff was harmed."  *Id.* at ¶ 13.

The only specified damage in his Amended Complaint was incarceration for 525 days; there is nothing in the amended complaint specifying what harm he suffered from the interrogation alone. But, confronted with the *Chavez* Court's construction of the due process clause, Mr. McConkie now asserts his cause of action has "always been" that his substantive due process claim rests on harm from the interrogation process alone.[5]

A judicious change of tack may be a mark of good lawyering, but this Court is skeptical as to what "harm" Mr. McConkie could have sustained from the police interrogation alone. There is no allegation of physical or mental abuse, injury to reputation, or other specific harm unrelated to his conviction and imprisonment.  At worst, Detective Nichols simply tricked him into incriminating admissions on the false assurance of confidentiality.  The First Circuit has written that Rule 12(b)(6) is "not entirely a toothless tiger", *Campagna v. Dep't of Envtl. Prot.,* 334 F.3d 150, 155 (1st Cir. 2003)(quoting *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989), *disapproved on other grounds by Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163 (1993)) and there is authority that

---

[5] *Pl.'s Mot. for Reconsideration of Order Granting Def.'s Mot. to Dismiss* at 3.  If harm flowing only from the interrogation and not from the prosecution, conviction, and incarceration truly had "always been" his claim, he would not have alleged the due process violation caused his incarceration. *See Amended Complaint* at ¶ 11 ("As a direct result of defendant Nichols' violation of plaintiff's due process rights, plaintiff was incarcerated by the State of Maine for at least 525 days.").

7

the courts are not required to credit "bald assertions" or legal conclusions. *Abbott v. United States,* 144 F.3d 1, 2 (1st Cir. 1998).

This case with its bald assertion of unspecified harm comes perilously close to Rule 12(b)(6) dismissal, but if Rule 12(b)(6) is not entirely toothless, it is nearly so. This Court is required to credit all well-pleaded facts and draw all reasonable inferences in Mr. McConkie's favor. *Campagna,* 334 F.3d at 154. Dismissal may be granted only if "under the facts alleged, [the plaintiff] cannot recover on any viable theory." *Nethersole v. Bulger,* 287 F.3d 15, 18 (1st Cir. 2002). Consequently, this Court GRANTS the motion for reconsideration with respect to the sufficiency of Plaintiff's allegation of harm arising out of the interrogation alone and vacates the order granting Defendant's motion to dismiss on this issue.

### B. Motion for Summary Judgment[6]

This Court now turns to the Defendant's motion for summary judgment. Plaintiff's relief rests, as he has assured us, on a substantive due process claim. To withstand summary judgment under this theory, there must be evidence when viewed in a light most favorable to Mr.

---

[6] As a preliminary issue, there is the curious matter of Detective Nichols' response to Mr. McConkie's request for admission. During discovery, Detective Nichols admitted that "McConkie spent 525 days in prison as a result of Nichols' violation of McConkie's due process rights". *Def.'s Answers to Requests for Admissions* at ¶ 17. Although this admission is not properly considered in the motion to dismiss, *see* footnote 1, it is in the motion for summary judgment. Mr. McConkie argues this admission controls this case, because Detective Nichols has admitted its essential allegation: that a due process violation occurred and that it caused harm. Detective Nichols has not filed a Rule 36(b) motion to withdraw or amend his admission. Nevertheless, this Court will not treat this admission as dispositive. First, to interpret the admission as a concession of liability and damages would be manifestly inconsistent with Detective Nichols' position in this law suit. The more benign and sensible interpretation, which this Court adopts, is that Detective Nichols admitted the undeniable: the Maine Law Court found a due process violation; and, but for the interrogation, Mr. McConkie would not have been jailed. *See Adventis, Inc.* v. *Consolidated Property Holdings, Inc.,* No. 04-1405, 2005 U.S. App. LEXIS 3546, *10-*11 (4th Cir. Mar. 2, 2005)(quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.,* 64 F.3d 1202, 1210 (8th Cir. 1995)); *Johnson v. DeSoto County Bd. Of Comm'rs,* 204 F.3d 1335, 1340-41 (11th Cir. 2000). Further, this Court has determined as a matter of law it was the unasserted Fifth Amendment claim, not a due process violation, that legally caused Mr. McConkie's incarceration. This Court will not give legal effect to a conclusion of law contrary to the law of the case. Third, Mr. McConkie has waived this argument. He now says that his claim has "always been" solely related to the police interrogation, not to the use of the statements at trial. *See* footnote 2. Fourth, as framed by Mr. McConkie, this admission is an admission of law, prohibited under the Rule. Fed. R. Civ. P. 36(a); *Kosta v. Connolly,* 709 F. Supp. 592, 594-95 (E.D. Pa. 1989); *Currie v. United States*, No. 85-629, 1986 U.S. Dist. LEXIS 23455 at *9 n.5 (M.D.N.C. Jun. 30, 1986); *Golden Valley Microwave Foods, Inc., v. Weaver Popcorn Co.,* No. 88-251, 1990 U.S. Dist. LEXIS 6467 at *11 (N.D. Ind. Jan. 17, 1990).

McConkie that Detective Nichols' conduct was oppressive or conscience-shocking.[7] *County of Sacramento v. Lewis,* 523 U.S. 833, 846-47 (1998); *Chavez,* 538 U.S. at 774-76. Defendant Nichols argues that "a single statement, unconnected to any actual or threatened physical harm or abuse, does not rise to the level of conscience shocking behavior."[8] *Def. Mot. Summ. J.* at 7. This Court agrees. "Conscience shocking" is reserved for extreme, outrageous, and otherwise heinous conduct, a standard which Defendant's conduct simply cannot meet.[9]

---

[7] There are two strands of substantive due process theory: shocks the conscience and deprivation of a fundamental right. At times, Mr. McConkie argues that this case can be evaluated under the latter standard. *Pl.'s Opp'n. to Def.'s Mot. to Dismiss and, in the alternative, for Summ. J.* at 8 (Docket # 28)("The court, however, need not resort to the application of the 'shock the conscience' standard since it is manifest that Nichols' interrogation interfered with rights 'implicit in the concept of ordered liberty'"). However, the Supreme Court and the First Circuit have clarified that in cases where executive, rather than legislative, action is at issue, conscience-shocking is the appropriate standard. *Depoutot v. Raffaelly,* No. 05-1529, 2005 U.S. App. LEXIS 21444, at *13 n.4 (1st Cir. Oct. 4, 2005)(citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). *See also Hawkins v. Freeman,* 195 F.3d 732, 738-39 (4th Cir. 1999)(en banc); *McIntyre v. United States*, 336 F.Supp.2d 87, 108 (D. Mass. 2004); *Whartenby v. Winnisquam Regional School District et al*, No. 00-21, 2001 U.S. Dist. LEXIS 4578, *12 (D.N.H. Mar. 14, 2001).

[8] Detective Nichols first argues that Mr. McConkie failed to state a claim for conscience-shocking conduct and should be subject to dismissal. *Def. Mot. Summ. J.* at 6. Relying on *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), he argues that substantive due process claims cannot be based on conduct that is merely reckless or callously indifferent. *Def. Mot. Summ. J.* at 6. Thus, Defendant claims, Mr. McConkie's allegation that "Defendant Nichols acted recklessly or with callous indifference to Plaintiff's substantive due process when he intentionally deceived plaintiff as to plaintiff's Fifth Amendment privilege against self-incrimination" was insufficient to state a claim. *Am. Compl.* at ¶16. This Court, however, disagrees with this interpretation of *Lewis*. In *Lewis*, the Supreme Court, while finding that deliberate indifference was not a high enough standard in the context of a high-speed police chase, (and finding that negligence never was), also noted that "whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls." 523 U.S. at 849. *Lewis* went on to describe that "closer calls" are determined by reference to circumstances and context – where actual deliberation is practical, "deliberate indifference" can be an appropriate standard. *Id.* at 849-51. *See Cummings v. McIntire*, 271 F.3d 341, 344 (1st Cir. 2001). *See also Chavez,* 538 U.S. at 774 ("While we rejected, in *Lewis*, a 1983 plaintiff's contention that a police officer's deliberate indifference during a high speed chase…violated due process…we left open the possibility that unauthorized police behavior in other contexts might "shock the conscience"). Given that the circumstances here may have allowed for "actual deliberation" and not "instant judgment", Plaintiff's allegation of reckless or callous indifference is enough to survive a motion to dismiss. *See Cummings,* 271 F.3d at 345.

[9] Although the Maine Supreme Judicial Court did not specify whether it considered the constitutional violation to be one of procedural or substantive due process, its decision applied a procedural due process analysis. *State v. McConkie,* 2000 ME 158, ¶ 10 n.4, 755 A.2d 1075, 1078 ("In similar circumstances, this Court has also applied the test set forth by the United States Supreme Court in *Mathews v. Eldridge*…which applies the following three factors to the procedure in question"). *Mathews* sets out an analytic method for procedural due process claims. *Mathews v. Eldridge,* 424 U.S. 319, 332-35 (1976). McConkie's complaint, however, alleges a *substantive* due process violation. *Am. Compl.* at ¶ 15; *Pl.'s Mot. for Reconsideration of Order Granting Def.'s Mot. to Dismiss* at 3 ("Before this Court, McConkie's complaint is, and has always been, that Nichols violated his substantive due process rights by affirmatively misleading him as to his right against self-incrimination during the interrogation process").

### 1. Standard of Review

A motion for summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The First Circuit has defined "material" to mean "a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *McCarthy v. Northwest Airlines, Inc.* 56 F.3d 313, 315 (1st Cir. 1995). It has defined "genuine" as "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Id*. The moving party must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The trial court is obligated to view the entire record "in the light most flattering to the nonmovant" and indulge "all reasonable inferences in that party's favor." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *see also Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

### 2. The Interrogation

The record when viewed in the light most hospitable to the Plaintiff produces the following: Sometime before the police interrogation, Detective Nichols called Mr. McConkie, identified himself as a detective, told him he was investigating allegations of sexual abuse, and set up a mutually agreeable time to meet. *Def.'s Statement of Material Facts* (DSMF) *at* ¶ 11 (Docket # 19). The interview between Detective Nichols and Mr. McConkie took place on June 23, 1998 at the Fairfield Police Department in Fairfield, Maine. *Id.* at ¶ 12. The interview took place in the Police Chief's office; only Detective Nichols and Mr. McConkie were present.[10] *Id*.

---

[10] Mr. McConkie objects to each of Defendant's Statements of Material Fact whenever his record reference is to a transcript of the Nichols interview on the ground that the "Interview Transcript speaks for itself." This is not a proper objection and this Court overrules it in each instance. *See Ricci v. Applebee's Northeast, Inc.,* 297 F.Supp. 2d 311, 321 (D. Me. 2003)("Local Rule 56 was designed to halt the former summary judgment practice of

10

at ¶ 13. The interrogation was non-custodial and Detective Nichols recorded the interview on an audiocassette. *Pl.'s Statement of Material Facts not in Dispute* (PSMF) at ¶ 3, 4 (Docket # 23). At the time of the interview, the only information Detective Nichols possessed regarding the alleged sexual contact came from the victim; there was no physical evidence, such as DNA or semen, which implicated Mr. McConkie. PSMF at ¶¶ 5, 6. Nonetheless, when he interviewed Mr. McConkie, Detective Nichols intended to obtain some kind of admission from him. PSMF at ¶ 7.

Detective Nichols assured Mr. McConkie that the allegations were "not a big deal". PSMF at ¶ 8; *Aff. of Michael S. McConkie*, ¶8 (Docket # 36 - Ex. B). Detective Nichols also told him that "regardless of what you say today, I am going to leave and you are going to leave. You are going to go back home today and that is going to be it." PSMF at ¶ 9. Finally, the Detective informed Mr. McConkie that "any information he provided during the interview would 'stay confidential, especially because a juvenile is involved'". PSMF at ¶¶ 10. Following these assurances, Mr. McConkie "made some incriminating statements." PSMF at ¶ 11. The incidents of sexual abuse alleged by the victim did not occur. *Pl.s' Statement of Additional Material Facts Not In Dispute* (PSAMF) at ¶ 28 (Docket # 29). When Detective Nichols made these representations to Mr. McConkie, he knew it was legally impermissible to promise leniency to a suspect or to lie about the nature of his Fifth Amendment rights, knew that any statements made by Plaintiff could be used against him in a later proceeding, and knew that Mr. McConkie had a constitutional right to remain silent. *Id.* at ¶¶ 12-15.

### 3. Conscience Shocking

---

submitting a voluminous record and leaving to the court the duty to comb the record in search of material facts."). If an objecting party contends the Statement of Material Fact misstates the referenced document, he should say so. However, to object to a statement of material fact solely on the ground that a deposition, document, or other referenced record "speaks for itself" betrays a fundamental misunderstanding of Local Rule 56.

In *Depoutot v. Raffaelly,* No. 05-1529, 2005 U.S. App. LEXIS 21444 (1st Cir. Oct. 4, 2005), the First Circuit recently reviewed the standards for imposing substantive due process liability on executive officials. In the "realm of executive action, the Due Process Clause 'does not entail a body of constitutional law imposing liability wherever someone cloaked with state authority causes harm' nor does it 'guarantee due care' by government officials." *Depoutot,* at *12 (quoting *Lewis,* 523 U.S. 833 at 846). *Depoutot* states: "This is as it should be; were the law otherwise, the Constitution would be downgraded to a 'font of tort law.'" *Id.* (quoting *Lewis,* 523 U.S. at 848 (quoting *Paul v. Davis,* 424 U.S. 693, 701 (1976))). To sustain a claim under the Due Process Clause, the "abuse of power" must be "so extreme and egregious as to shock the contemporary conscience." *Id.* at *12-*13.

"Conscience shocking" is, as the phrase implies, a very high standard, reserved for very low behavior. *Depoutot,* at *16; *Lewis,* 523 U.S. 833, 847 n.8 (1998)("…behavior…so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."); *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir. 1993)("We have left the door ajar for federal relief in truly horrendous situations."). Most commonly, "conscience shocking" provides relief for physical abuse. *See Rochin v. California,* 342 U.S. 165 (1952)(due process violated when evidence obtained by subjecting a suspect to an involuntary stomach pump)[11]; *Beecher v. Alabama*, 389 U.S. 35 (1967) (police shot a suspect in the leg, held a loaded gun to his face, then fired a rifle next to his ear and told him that if he didn't tell the truth, he would be killed); *Clewis v. Texas*, 386 U.S. 707 (1967) (suspect was arrested without probable cause, interrogated for several days with little food or sleep, and gave

---

[11] At the time the Supreme Court decided *Rochin*, the Court had not yet held that the Fourth Amendment's exclusionary rule extended to the States through the due process clause. Subsequent to the decision, the Supreme Court applied the rule to the States in *Mapp v. Ohio*, 367 U.S. 643 (1961). Today, cases like *Rochin* would be decided under the Fourth Amendment, "albeit with the same result". *Lewis,* 523 U.S. at 849 n.9.

three unwarned "confessions" the first two of which he immediately retracted); *Harrington v. Almy*, 977 F.2d 37 (1st Cir. 1992)(reasonable fact-finder could find conscience-shocking conduct when police officer charged with child abuse was required to take a penile plethysmograph as a condition of reinstatement); *Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998)(rape by police officer in connection with a traffic stop); *Hemphill v. Schott,* 141 F.3d 412, 419 (2d Cir. 1998)(police officers aided a third-party in shooting the plaintiff).

In *Cruz-Erazon v. Rivera-Montanez,* 212 F.3d 617 (1st Cir. 2000), the First Circuit found that conduct by police officers was not sufficiently conscience-shocking despite allegations that the officers had verbally harassed homeowners, intimidated and threatened them, occupied their property without permission, deliberately lied in official documents and perjured themselves in court proceedings with the intention of having homeowners convicted of burglary and breach of the peace. After reviewing Supreme Court precedent, the Court suggested that "conscience shocking" behavior must generally be either physically intrusive or violent, or strike at the basic fabric of a protected relationship, such as the parent-child relationship. *Id*. at 623. *See Brown v. Hot, Sexy and Safer Productions, Inc*., 68 F.3d 525, 532 (1st Cir. 1995)("the threshold for alleging such [words or verbal harassment] claims is high"); *Ramirez-De Leon v. Mujica-Cotto,* 345 F. Supp.2d 174, 186 n.6 (D.P.R. 2004)("The First Circuit has found 'conscience shocking' conduct only where the state actors engaged in 'extreme or intrusive physical conduct.' *Souza v. Pina*, 53 F.3d 423, 427 (1st Cir. 1995). It has not, however, foreclosed the possibility that words or verbal harassment may constitute 'conscious shocking' behavior in violation of substantive due process rights…but the threshold for alleging such claims is high").

Generally, claims based only on verbal threats and promises during interrogations have fared badly, failing to meet the "conscience-shocking" threshold described in *Brown* and

*Ramirez-De Leon*. See *Sheets v. Butera*, 389 F.3d 772, 778-9 (8th Cir. 2001)(affirming the grant of a summary judgment motion and finding that "the specific conduct contested by Sheets…fail[s] to rise to the conscience-shocking level…telling Barnett that people had come to the police with information that he and Sheets were involved in the murder, and that Sheets would be interviewed at some time, does not amount to a threat that could lead to a false confession. Nor does pointing out to Barnett that he was a twenty-one-year-old man with a young family and that the way he handled the current situation would affect how his family viewed him in the future, nor that the police already had enough evidence to know of Barnett's involvement but that he just needed to better explain how and why the murder happened."); *Higazy v. Millennium Hotel & Resorts*, 346 F.Supp.2d 430, 451 (S.D.N.Y. 2004)(summary judgment motion granted as FBI Agent's "alleged threats, whether intended to coax a confession or arbitrarily frighten, may be the subject of proper criticism, but they are not actionable under the Fifth Amendment's due process clause"); *Crowe v. County of San Diego*, 359 F.Supp.2d 994, 1034 (S.D. Cal. 2005)(summary judgment motion granted as "although defendants employed a 'good cop/bad cop' approach during some of the interviews, such a manner of interrogation is relatively common and certainly not shocking, even when juveniles are involved").

In the few cases where an interrogation alone has supported a conscience-shocking claim, there have usually been at least some allegations of physical force or abuse. In *Chavez,* the Supreme Court remanded to the Ninth Circuit to determine whether a suspect had a conscience-shocking claim against the police for conduct during his interrogation. In allowing the claim, the Ninth Circuit relied in part upon implications of physical abuse - allegations that the officer had interfered with the medical treatment of the defendant while he was "screaming in pain".[12]

---

[12] *Martinez* describes the allegation: "Martinez alleges that Chavez brutally and incessantly questioned him, after he had been shot in the face, back, and leg and would go on to suffer blindness and partial paralysis, and interfered with

14

*Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003). *See also Sloane v. Kanawha County Sheriff Dep't*, 342 F.Supp.2d 545, 553 (S.D. W. Va. 2004)(police's alleged interrogation tactics of a suspect believed to be possibly suicidal, including administering a polygraph, blocking the exit, and forcing the suspect to write an apology to the victim deemed sufficient to support a due process claim on a motion to dismiss).

Mr. McConkie's best case is probably *Limone v. Condon,* 372 F.3d 39 (1st Cir. 2004), where the First Circuit addressed the intentional framing of innocent citizens for serious crimes they did not commit and concluded that this police action met the conscious shocking standard. The officers' culpability in *Limone*, however, is different in scope and degree to Detective Nichols' actions. In *Limone,* the First Circuit related a "sordid picture" in which the law enforcement officers "purposefully suborned false testimony from a key witness" and "suppressed exculpatory evidence in an effort both to cover up their own malefactions and to shield the actual murderers (one of whom was being groomed as an FBI informant)." *Id.* at 44. *Limone* concluded this was "easy pickings" since it is "self-evident" that the United States Constitution prohibits those charged with upholding the law "from deliberately fabricating evidence and framing individuals for crimes they did not commit." *Id.* at 44-45.[13] But, *Limone* is easily distinguished. Even viewed in a light most favorable to Mr. McConkie, there is no allegation Detective Nichols fabricated evidence. Mr. McConkie acknowledges he made the

---

his medical treatment while he was 'screaming in pain… and going in and out of consciousness.' Chavez allegedly continued this 'interrogation' over Martinez's pleas for him to stop so that he could receive treatment. If Martinez's allegations are proven, it would be impossible not to be shocked by Sergeant Chavez's actions." *Martinez,* 337 F.3d at 1092.

[13] In a similar vein, see *Washington v. Buraker*, 322 F.Supp.2d 702, 709 (W.D. Va. 2004)(allegations that interrogating officers knew defendant had not volunteered non-public information but represented that he in fact had, are sufficient to survive summary judgment on a due process claim). In *Buraker*, as in *Limone,* the claim was not simply that the police officers had engaged in *deception* but, more egregiously, that they had engaged in wholesale *fabrication*. More specifically, there was evidence that an officer had deliberately fed a mentally-impaired suspect nonpublic information and then claimed to both prosecutors and the Court that it had originated with him. *Id.*

confession which resulted in his original conviction. He only says the confession was improperly elicited through trickery.[14]

### 4. Application of the Conscious Shocking Standard to Detective Nichols' Actions

Without more, the fact that Detective Nichols may have misled Mr. McConkie to induce him to believe that his statements would remain confidential, that the charges were not serious and that they would lead to little or no consequences is not enough to meet the rigorous standard of "conscience-shocking". Indeed, it is arguably not even coercive. *See United States v. Bezanson-Perkins*, 390 F.3d 34, 41 (1st Cir. 2004)("trickery is not automatically coercion"); *United States v. Flemmi*, 225 F.3d 78, 91 n.5 (1st Cir. 2000)("of course, trickery can sink to the level of coercion, but this is a relatively rare phenomenon"); *United States v. Byram*, 145 F.3d 405, 408-9 (1st Cir. 2000)("While the line between ruse and coercion is sometimes blurred, confessions procured by deceits have been held voluntary in a number of situations…given the narrowed definition of coercion…it would be very hard to treat as coercion a false assurance to a suspect that he was not in danger of prosecution…The Supreme Court's tolerance of police guile in *Frazier* [*Frazier v. Cupp*, 394 U.S. 731 (1969)]…makes clear that the police can often mislead suspects, at least where coercion is not involved; thus, it is impossible to treat all such false statements as improper, let alone outrageous or uncivilized…In this case, 'facts more egregious than those presented here' would be required to 'rise to a level of a due process violation'"). *See also Coombs v. Maine*, 202 F.3d 14, 19 (1st Cir. 2000)("it is less apparent to us than to the Maine Law Court that if a promise had been made it automatically would have rendered the confession involuntary").

---

[14] Mr. McConkie states "the sexual abuse… did not occur." PSAMF ¶ 28. Accepting this assertion for purposes of the motion for summary judgment means that the confession Detective Nichols elicited was a false confession. Even so, there is no allegation, unlike *Limone*, that Detective Nichols knew Mr. McConkie's confession was false or Detective Nichols fabricated evidence, suppressed exonerating evidence, or otherwise acted improperly.

### III. Conclusion

This Court DENIES in part Plaintiff's Motion for Reconsideration of its July 1, 2005 Order, affirming the dismissal of all claims relating to an unasserted Fifth Amendment claim, including any damages relating to his prosecution, conviction, and incarceration. This Court GRANTS in part Plaintiff's Motion for Reconsideration of its July 1, 2005 Order to the extent the Order affirmed the recommended decision's recommended granting of the Defendant's Motion to Dismiss on Plaintiff's substantive due process claim relating only to the police interrogation. It DENIES Defendant's Motion to Dismiss Plaintiff's substantive due process claims alleging harm flowing solely from the police interrogation. This Court GRANTS Defendant's Motion for Summary Judgment and DISMISSES as moot Plaintiff's Motion for Partial Summary Judgment.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of October, 2005